IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NURSA, INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>GULF COAST LTC PARTNERS, INC., et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS<br><br>Case 2:24-cv-00781-TS-DAO<br><br>District Judge Ted Stewart<br>Magistrate Judge Daphne A. Oberg |

This matter is before the Court on Defendants Gulf Coast LTC Partners, Inc. and The Plaza at Richardson's Motion to Dismiss for Failure to State a Claim.[1] For the reasons stated below, the Court will grant the Motion.

## I. BACKGROUND

Plaintiff Nursa, Inc. is a software company that connects healthcare facilities with clinicians that operate as independent contractors.[2] Defendant The Plaza at Richardson LTC Partners, Inc. ("Richardson") is a Texas corporation and a healthcare facility.[3] Defendant Gulf Coast LTC Partners, Inc. ("Gulf Coast") is the managing corporation that owns Richardson.[4]

Nursa brings this action seeking payment of outstanding invoices and fees owed by Richardson, including attorney fees. Nursa alleges four causes of action against Richardson: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing (in the alternative);

---

[1] Docket No. 37.

[2] Docket No. 36 ¶ 12.

[3] *Id.* ¶ 7.

[4] *Id.* ¶ 8.

(3) contract implied in fact (in the alternative); and (4) unjust enrichment (in the alternative).[5] Nursa alleges one cause of action against Gulf Coast: tortious interference with economic relationships—the claim at issue here.

Nursa's app enables a medical facility to post job shifts to be filled by a clinician.[6] Clinicians can then apply for job postings to fill the facility's shifts.[7] When a facility uses the app, a representative must enter a Terms of Service Agreement ("TSA") on its behalf.[8] The TSA outlines the parties' arrangement: Nursa provides a report to the facility after a clinician has finished their shift.[9] The facility verifies the shift manually or automatically.[10] Nursa pays the clinician for the completed work and invoices the facility for the clinician's work.[11] A facility's failure to pay results in a monthly late fee of 1.5% of the unpaid balance, which is multiplied against the bill and compounded daily.[12]

On or about March 14, 2022, Ashlynn Nobles entered into a TSA with Nursa on behalf of Richardson.[13] Over time, Richardson posted and approved shifts that clinicians accepted and worked.[14] Nursa provided Richardson with a monthly statement on the first of each month and allotted it a 30-day period to report errors or bring a contest.[15]

---

[5] *Id.* at 10–13.

[6] *Id.* ¶ 13.

[7] *Id.* ¶ 14.

[8] *Id.* ¶¶ 19, 22.

[9] *Id.* ¶ 26.

[10] *Id.* ¶ 28.

[11] *Id.* ¶¶ 30–31.

[12] *Id.* ¶ 33.

[13] *Id.* ¶ 36.

[14] *Id.* ¶ 38.

[15] *Id.* ¶¶ 41–42.

On May 2 and May 4 of 2023, Nursa's head of finance contacted Richardson by email to obtain payment.[16] An individual named Helena Jones emailed back from "The Plaza at Richardson" claiming that she had processed the invoices, but Nursa did not receive the payment.[17] Nursa followed up on May 17, 2023, and received a reply from an individual named Jamie Sanchez ("Sanchez") on May 22, 2023, on behalf of "Gulf Coast LTC Partners."[18] Sanchez requested additional information from Nursa over several communications, which Nursa provided.[19] From the parties' communications, Nursa expressly understood that Gulf Coast would be processing and disbursing payments on Richardson's behalf.[20] Gulf Coast never sent payment.[21]

As of July 3, 2025, Richardson owed Nursa an outstanding principal of $135,391.27 and had accrued $85,010.16 in late fees for a total outstanding balance of $220,401.43, plus daily compounding interest.[22] These circumstances compelled Nursa to bring suit against Gulf Coast because it represented that it was the party from whom Nursa should seek payment. Nursa claims that Richardson and Gulf Coast as its designated payor, "have continually refused to acknowledge the legitimacy of this dispute and to pay these outstanding balances and late fees."[23] Nursa seeks recovery of the $220,401.43, plus interest from Richardson, but alternatively seeks to recover the amount from Gulf Coast.[24]

---

[16] *Id.* ¶ 43.

[17] *Id.* ¶¶ 44–45.

[18] *Id.* ¶¶ 45–46.

[19] *Id.* ¶¶ 46, 47, 49.

[20] *Id.* ¶ 54.

[21] *Id.* ¶ 58.

[22] *Id.* ¶ 65.

[23] *Id.* ¶ 67.

[24] *Id.* ¶ 113.

Nursa filed its Second Amended Complaint on July 7, 2025.[25] Defendants filed the instant Motion on July 21, 2025, seeking dismissal of the Fifth cause of action asserted against Gulf Coast. Defendants argue that Nursa failed to allege a valid claim for tortious interference of economic relations because it did not plausibly allege improper means. Defendants additionally argue that Nursa's damages flow from its contract with Richardson and, because Gulf Coast was not a party to that contract, it has not damaged Nursa.

## II.  LEGAL STANDARD

When evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[26] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[27] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[28] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[29]

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[30] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[31] The Court may also consider other documents "referred to in the

---

[25] Docket No. 36.

[26] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[29] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[30] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[31] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[32]

## III.  DISCUSSION

To state a claim for tortious interference the plaintiff must allege (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff.[33] The parties do not dispute the first element. Defendants argue that the Complaint fails to sufficiently plead that Gulf Coast's actions constitute improper means or caused injury to Nursa.

A. Nursa fails to plausibly allege that Gulf Coast's interference was by improper means.

Under Utah law, "improper means" is defined "narrowly to include only those actions that are contrary to law, such as violations of statutes, regulations, or recognized common-law rules, or actions that violate an established standard of a trade or profession," and include actions such as "violence, threats or other intimidation, *deceit or misrepresentation*, bribery, unfounded litigation, defamation, or disparaging falsehoods."[34] Utah courts have provided that "a person is not liable for intentional interference where the person engaged only in conduct in which he or she was legally entitled to engage"[35] and that "[a]ctions taken in the commercial context that may constitute sharp practices but that are not independently tortious do not qualify as 'improper means.'"[36] To demonstrate that a defendant committed "'deceit or misrepresentation' that might

---

[32] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[33] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553.

[34] *C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 42, 437 P.3d 343 (emphasis added) (internal quotation marks and citations omitted).

[35] *England Logistics, Inc. v. Kelle's Transp. Serv., LLC*, 2024 UT App 137, ¶ 42, 559 P.3d 45 (quoting *C.R. England*, 2019 UT 8, ¶ 44).

[36] *Co-Diagnostics Inc. v. HuiKui Tech. Inc.*, 2025 UT App 74, ¶ 41 571 P.3d 1178 (citation omitted).

qualify as 'improper means,'" the plaintiff must show that the defendant "committed an act that was either illegal or constituted an actionable tort (for instance, one sounding in fraud)."[37]

The Complaint alleges that Gulf Coast "acted through improper means by inserting itself into the contractual relationship and diverting the process of payment from Richardson to Nursa without privilege, legal right, or lawful justification, . . . without good faith and with the sole purpose of interfering with Richardson's compliance with its contractual obligations."[38] However, the Complaint fails to allege that Gulf Coast's actions were contrary to law or otherwise independently actionable by, for example, pleading the necessary elements to support that Gulf Coast's action amounted to fraud.

Nursa argues that the Complaint includes sufficient facts to support that Gulf Coast's actions constituted wire fraud.[39] However, a specific allegation of, or even the words "wire fraud" are not included in the Complaint. Nursa argues that the facts alleged are sufficient to support a claim for wire fraud. However, without *any* mention of "wire fraud" in the Complaint, the Court finds that the Complaint fails "to give [Gulf Coast] fair notice of the claim and the grounds upon which it rests," as required to state a claim.[40]

B. Nursa fails to allege damage or injury caused by Gulf Coast.

"A plaintiff must prove causation to recover damages for tortious interference. To prove causation, the plaintiff must present evidence of a causal link between the alleged tortious interference and the harm."[41] The Complaint alleges that Gulf Coast's misrepresentations were

---

[37] *Id.* ¶ 42 (citation omitted).

[38] Docket No. 36 ¶ 107.

[39] Docket No. 40, at 10.

[40] *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted) (cleaned up).

[41] *Musselman v. Keele*, 2024 UT App 143, ¶ 27, 559 P.3d 64.

"*intended* to cause Nursa to forbear from seeking payment directly from Richardson"[42] and generally that, "upon information and belief, as a result of Gulf [Coast's] conduct, Richardson never fully paid its invoices."[43] However, the Complaint fails to provide specific allegations supporting that, but for Gulf Coast's actions, Nursa would have been able to recover the alleged debt owed by Richardson.[44]

Nursa's Response does not shed any additional light on the basis for its conclusory allegation that Gulf Coast's action caused Richardson to withhold payment. Instead, it asserts, again conclusively, that "Nursa was injured . . . because Gulf Coast's interference induced Richardson to avoid its contractual obligations thus causing damage to Nursa."[45]

Therefore, the Court finds that Nursa fails to plead sufficient facts to support either improper means or causation and will grant Defendants' Motion.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 37) is GRANTED.

DATED this 31st day of March, 2026.

BY THE COURT:

Ted Stewart
United States District Judge

---

[42] Docket No. 36 ¶ 106.

[43] *Id.* ¶ 108.

[44] *See Musselman*, 2024 UT App 143 ¶ 27 (finding that the plaintiff failed to show the requisite causal link between a pending bar complaint and his failure to obtain employment where the plaintiff did not prove that "without the bar complaint against him, he would have been offered a job").

[45] Docket No. 40, at 15.